UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RODERICK ALBRECHT, et al.,

                    Plaintiffs,

                                                07-CV-6162

          v.                                    **DECISION**
                                                **and ORDER**

THE WACKENHUT CORPORATION,

                    Defendant.
_____

## INTRODUCTION

     Plaintiffs are present and former employees of the defendant,

The Wackenhut Corporation ("Wackenhut" and/or "defendant"), who are

or were employed as security guards at the Ginna Nuclear Power Plant

in Ontario, New York ("Ginna"). Plaintiffs bring this action alleging

violations of the Fair Labor Standards Act of 1938, as amended, 29

U.S.C. §201 *et seq*. ("FLSA") and violations of New York Labor Law

("NYLL") seeking additional compensation for certain activities that

occurred before and after their scheduled work shifts and workdays.

Specifically, plaintiffs allege that Wackenhut violated the FLSA and

the NYLL by failing to pay them for time spent arming up and checking

through security and arming down at the Ginna facility.

     Defendant moves for summary judgment[1] contending that the federal

and wage hour laws recognize that employers are not required to

compensate employees for time spent traveling or walking to their

assigned work stations and/or engaging in other activities that are

_____

[1]The parties consented to a bifurcated pre-trial procedure wherein plaintiffs were allowed to pursue joinder
of additional Ginna guards to this action. The parties later engaged in discovery on the threshold question of whether
the activities at issue in this case (arming up and arming down) constituted compensable work time under the FLSA
and NYLL. Having completed discovery on this threshold issue, defendant now moves for summary judgment.

preliminary or postliminary to the performance of their assigned jobs. In addition, Wackenhut argues that the Second Circuit has held that time spent clearing security and performing preliminary tasks at a nuclear power plant is not compensable under the FLSA and NYLL. Wackenhut also claims that federal courts recognize that preliminary and postliminary activities can be excluded from compensable time where the time spent performing the activities is *de minimis*. Further, defendant contends that an additional and independent ground exists for dismissal of plaintiffs' wage and hour claims after March 1, 2006, since it is undisputed that the plaintiffs were compensated for all time spent arming up and down after that date.

Plaintiffs oppose defendant's motion and cross-move for partial summary judgment on the issue of liability. Plaintiffs contend that the activities at issue are integral and indispensable to their work and accordingly are compensable. In addition, contrary to Wackenhut's assertion, plaintiffs argue that the time required to perform the tasks at issue in this case is not *de minimis*. Finally, plaintiffs assert that their claim for failure to pay overtime compensation must await further discovery. For the reasons set forth below, I grant defendant's motion for summary judgment, and deny plaintiffs' cross-motion for partial summary judgment.

## BACKGROUND

On March 26, 2007, plaintiffs[2] filed a Complaint alleging violations of the FLSA and the NYLL. See Docket # 1. In their Second

---

[2]The guards at Ginna are represented by Local 27 of the Int'l Union, United Government Security Officers of America and their terms and conditions of employment are governed by a collective bargaining agreement.

Amended Complaint, a total of 115 former and current security guards seek compensation for time spent engaging in three specific activities namely "arming up and checking through security[3] and arming down." <u>See</u> Docket # 28, ¶13. In addition, plaintiffs represent that the total amount of time for these activities, which they claim is at issue in this case, is fifteen minutes. Defendant contends, and the records evidence shows, that the time at issue is substantially less than fifteen minutes.

Ginna is a single unit nuclear generating station located along the shores of Lake Ontario in the Village of Ontario, New York. The facility is regulated by the Nuclear Regulatory Commission and has a secured area into which only authorized individuals have permission to enter. Wackenhut has provided security services at Ginna since 1978. To gain access into the secured area, all employees, contractors, and visitors to the site must pass through a security clearance process located at Ginna's Security building.

### A. <u>Schedules and Duties of Wackenhut Guards</u>

Wackenhut guards staff and monitor the security clearance process at different posts located at the main entrance to the Security Building. In addition, the guards provide security services

---

[3]In its reply memorandum, Wackenhut argues that in its initial memorandum of law, it asserted that based on Second Circuit case law the time spent clearing security at a nuclear plant is not compensable under the FLSA or the NYLL. <u>See</u> Def. Reply Br. at 2. In addition, defendant claims plaintiffs have provided no responsive argument concerning this claim in their opposition papers and admit all of the material facts associated with this issue. <u>See id.</u> Defendant accordingly contends that plaintiffs have abandoned the claims for time allegedly spent "clearing security." <u>See id.</u> Because of plaintiffs' failure to respond to this argument, the Court finds that plaintiffs have abandoned their claim for time spent "clearing security" and thus Wackenhut is entitled to summary judgment on this issue. See <u>Caravella v. Hearthwood Homes Inc.</u>, 2007 WL 2886507, at *11 n.6 (N.D.N.Y.2007); <u>Barmore v. Aidala</u>, 419 F.Supp.2d 193, 201 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim[.]") (citations omitted).

at different posts located around the facility. The guards at these posts are responsible for monitoring security clearance equipment, conducting inspections and searches of persons, materials and vehicles entering the protected area of the plant, patrolling the protected area, monitoring internal and external security alarms and escorting persons and/or verifying the identity of persons accessing the protected area. These duties can be performed by armed or unarmed guards. Plaintiffs contend that they are also charged with functions of enforcing against sabotage, espionage and other subversive activities. Defendant states that while Ginna guards are armed, no guard has ever had to discharge a weapon in the performance of his or her duties.

Wackenhut provides security services at the facility on a twenty-four hour basis and currently operates on three standard eight-hour shifts starting at 6:30 a.m., 2:30 p.m. and 10:30 p.m., respectively. The work schedules are issued by Wackenhut's Operations Supervisor, who is currently Christopher Hook. Prior to June 2003, security guards could be assigned to one of the eight-hour shifts or to a twelve-hour shift that started at either 6:30 a.m. or 6:30 p.m.

### B. <u>Arming Up and Reporting to Post Prior to March 1, 2006</u>

The guards report to work in uniform, which consists of blue pants, a blue shirt, boots, a hat, jacket and other equipment. The guards are free to wear their uniforms home and return to work in uniform on their next scheduled workday. Before March 1, 2006 guards were permitted to leave Ginna with most of the equipment issued by

Wackenhut, including their gun belts, radio pouches and bandoliers. The only equipment that guards were required to leave on site was their service revolver, which was kept in the armory, and a handheld radio, which was stored in a nearby charging unit. Plaintiffs contend that service revolvers and handheld radios were stored in various locations on the Ginna facility at different relevant time periods.

There is no dispute that the arming up and arming down process prior to March 1, 2006 took place in the room in which the armory was located. According to Wackenhut, after clearing security, the guards were able to go directly to the room in which their weapons and radios were stored to retrieve them before reporting to their assigned post. Plaintiffs claim that upon clearing security, the guards were required to first report to the locker room to obtain ammunition, gun belts, radio pouches and bandoliers, before obtaining their firearms and radios in the armory.

The process of arming up began with a guard identifying the serial number of his or her weapon and would then retrieve the weapon in a clearing barrel from a supervisor in the armory. The guard would then follow a series of instructions from the supervisor concerning the process of loading and holstering his or her weapon. The arming up process was complete when the guard holstered the weapon. The deposition testimony of several plaintiffs confirm that it took thirty seconds to less than a minute from the time when a security guard identified the serial number on his weapon to the time the weapon was holstered. The arming down process was essentially the

same process in reverse and was completed in the same amount of time. After retrieving their weapon, guards obtained a handheld radio at a location in the same area as the armory, at which time each signed a log to identify which radio they took. It is undisputed that the arming up and arming down process was routine, relatively effortless and could be completed in a short time frame.

Upon completion of the arming up process and retrieval of the handheld radio, guards then reported to their first assigned post. Based on the deposition testimony, it takes less than thirty seconds to walk from the armory, which is currently located in the guard house, to many of the posts. The remaining posts can be reached by a person walking at a normal pace in one to five minutes. Plaintiffs claim that the amount of time to arm up and arm down depends upon various factors. Further, plaintiffs submitted four affidavits in opposition to Wackenhut's summary judgment motion alleging that it took them between eight minutes to fifteen minutes to complete pre-shift activities prior to March 1, 2006. However, these alleged time ranges are not consistent with the deposition testimony of various plaintiffs deposed by defendant.[4]

---

[4]In addition, the affidavits provided by the four guards demonstrate that they included in the time estimates time that they claim they spent engaging in activities that are separate and distinct from arming up and arming down. For instance, the four guards included in the time estimates in their affidavits the time they claim they spent walking from the room in which the armory was located to their assigned posts. Moreover, they included in their estimates the time they allegedly spent engaging in certain activities that occurred before the arming up process started, such as time allegedly spent on occasionally having to wait for the arming up process to begin. They also included in their estimates the time that they allegedly spent on occasionally addressing radio issues or difficulties. These alleged radio issues happen infrequently and take a matter of seconds to address e.g. dealing with radio traffic at the BRAVO alarm station would take no more than five seconds to address.

According to defendant, security guards were not asked to perform any work before the start of their regularly-scheduled shifts. Before March 1, 2006, guards were compensated for all work time beginning with the start of their scheduled shift but guards were not required to arrive on site at any specified time prior to their scheduled shift to be considered on time. Plaintiffs contend that they were required to report to their post 15 minutes before the start of their shift but were not compensated until their shift actually started. Wackenhut argues that plaintiffs did not have to arrive at the site at any particular time prior to the start of their shift to be on time. In fact, prior to March 1, 2006, defendant was aware of many occasions on which guards completed the security clearance process just a minute or two before the start of their scheduled shift and were able to retrieve their weapon and radio and report to their post on time. These guards were not disciplined and were considered to be in compliance with Wackenhut's policies and expectations.

### C.    Pre-Shift Briefings That Began in February 2006

On or about February 26, 2006, Wackenhut implemented a pre-shift briefing process for all guards at the Ginna facility. During these briefings, guards are advised about various issues relevant to their position including any incidents that may have occurred in previous shifts, developments in the industry, and/or changes in any policies or procedures by Wackenhut. The pre-shift briefing is held in the Security Building. Guards are able to go directly to the briefing

room once they complete the security clearance process in the same building. Since the implementation of these pre-shift briefings, guards report to the briefing room fifteen minutes before the start of their scheduled shifts. For instance, a guard assigned to the 6:30 a.m. to 2:30 p.m. shift must report, in uniform, to the briefing room by 6:15 a.m. At the conclusion of the pre-shift briefing, the security guards report to the armory to retrieve their weapons and then proceeded to their first assigned post. Since on or about February 26, 2006, guards have been compensated from the start of the pre-shift briefings, which occur before the arming up process begins. They continue to be paid through the remainder of the day until the arming down process is completed at the end of their shifts.

Plaintiffs argue that the time spent from the beginning of the pre-shift briefing until the commencement of their scheduled shifts are not calculated towards overtime. Defendant contends that plaintiffs' assertions are inconsistent with the plaintiffs' deposition testimony and the terms of the written policy issued at the same time that the shift briefings were implemented. According to defendant, the Wackenhut employee manual for the February 2006 time period provided that guards would be compensated for time spent during the shift briefing and de-gunning process. In addition, the policy stated that this time would be compensated at the guards' normal base rate for time under forty hours in a week and at the guards' overtime rate for time over forty hours in a week.

**DISCUSSION**

**I.    Standard of Review**

**A.    Summary Judgment Standard**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the movant has "'show[n]' or point[ed] out...that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge his burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S. at 255; Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769,

1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson, 477 U.S. at 249-50, (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")

**B.   Local Rule Requirements**

The Local Rules of the Western District of New York provide that a party moving for summary judgment must submit a "Statement of Facts" which requires the moving party to include with its motion for summary judgment a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(a). The Local Rules also provide that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure

56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority. <u>See</u> <u>id.</u> R. 56.1(d). Wackenhut has complied with this rule. However, plaintiffs failed to file a Rule 56.1 Statement of Material Facts in support of their cross-motion for summary judgment. This failure alone would justify denial of their motion for summary judgment. <u>See</u> Local Rule 56.1(a); <u>see</u> <u>also</u> <u>Luizzi v. Pro Transport Inc.</u>, 2009 WL 252076, at *3 (E.D.N.Y.2009); <u>MSF Holding Ltd. v. Fiduciary Trust Co., Inter.</u>, 435 F.Supp.2d 285, 304-05 (S.D.N.Y.2006) (denying defendant's motion for summary judgment for failure to submit a 56.1 statement); <u>Searight v. Doherty Enter., Inc.</u>, 2005 WL 2413590, at *1 (E.D.N.Y.2005) (denying motion for summary judgment for failure to submit a 56.1 statement).

However, district courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules." <u>See</u> <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir.2001); <u>Healthfirst, Inc. v. Medco Health Solutions, Inc.</u>, 2006 WL 3711567, at *5 (S.D.N.Y.2006). Where parties fail to file a Rule 56.1 Statement of Fact, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately "opt to conduct an assiduous review of the record." <u>Id.</u> (internal quotations and citations omitted); <u>see</u> <u>also</u> <u>Sawyer v. Wight</u>, 196 F.Supp.2d 220, 225 (E.D.N.Y.2002) (noting that where Rule 56.1 has not been properly followed, courts "may discretionarily choose to search the record of their own accord")

(citations omitted). In this case, counsel for plaintiffs submitted affidavits from four plaintiffs and his own affirmation and exhibits in support of the cross-motion for summary judgment and in opposition to Wackenhut's summary judgment motion, which the Court has thoroughly reviewed. It is clear that plaintiffs committed a procedural error when they failed to file a 56.1(a) Statement of Facts in support of their cross-motion for summary judgment. Based on the undisputed evidence, as reflected in the papers submitted by the parties, the Court grants summary judgment in favor of Wackenhut, thus rendering plaintiffs' non-compliance with Rule 56.1 as moot.

## II.  <u>Compensability of Plaintiffs' Work for Arming Up and Arming Down Prior to March 1, 2006</u>

Defendant contends that plaintiffs cannot demonstrate that the time spent arming up and arming down constitute work time under Second Circuit law. <u>See</u> Def, Br. at 7. Further, defendant argues the undisputed facts show that the activities about which they complain is not compensable under the established FLSA standards. <u>See</u> <u>id.</u> In addition, defendant claims that an independent and separate basis for denial of plaintiffs' claim is that the evidence shows that the amount of time at issue for this function is *de minimis*. <u>See</u> <u>id.</u> Plaintiffs however contend that the activities of arming up and arming down are integral and indispensable to their principal activities as guards at Ginna as a matter of law. <u>See</u> Br. at 4.

## A.    Arming Up and Arming Down prior to March 1, 2006

This case falls under the purview of the 1947 Portal-to-Portal Act, in which Congress provided that employers would not be liable to provide compensation for activities which are "preliminary to or postliminary to" the principal activity or activities which employees are employed to perform. See 29 U.S.C. §254(a)(2). Applying the Portal-to-Portal Act, the Supreme Court has determined that activities performed before or after an employee's regular work shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workman are employed." See Steiner v. Mitchell, 350 U.S. 247, 256 (1956). Moreover, in Gorman v. Consolidated Edison Corp., 488 F.3d 586, 594 (2d Cir.2007), the Second Circuit articulated a distinction between the terms "indispensable" and "integral." While "indispensable" means only "necessary," the term "integral" adds the requirement that the activity be "essential to completeness...organically linked...[or] composed of constituent parts making a whole." See id. at 592. Therefore, unless an activity is essential to complete the employee's task, it is excluded from compensation under the Act. See id.; see also IBP, Inc. v. Alvarez, 546 U.S. 21, 40-41 (2005) (unless an activity is both integral and indispensable to performing the job, it is not a principal activity of the job).

In Gorman, the plaintiffs sought compensation for time spent donning and doffing helmets, safety glasses, and steel-toed boots.

The court conceded that such gear might have been indispensable to the employees' work, in that it was required by the employer or by government regulations, but found that the donning and doffing of such gear was not integral to the employees' work at Indian Point and accordingly, did not constitute "work time" for purposes of the FLSA. See Gorman, 488 F.3d at 594. Rather, the Court opined that "[t]he donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation." See id. (citing Reich v. IPP. Inc., 38 F.3d 1123, 1126 (10th Cir.1994) (holding that donning and doffing safety glasses, a pair of ear plugs, a hard hat, and safety shoes "although essential to the job, and required by the employer, are pre- and postliminary activities").

The Gorman court also contrasted the uncompensated wearing of generic safety gear with the complete changing and showering required by the employer in Steiner. It also contrasted the wearing of specialized gear required for employees who worked in the nuclear containment area, for which those employees were compensated. The court reasoned that procedures for wearing this specialized gear were integral to the act of working in the hazardous environment of the containment area. By contrast, the court found that "the donning and doffing of...generic protective gear [such as a helmet, safety glasses, and steel-toed boots] is not different in kind from 'changing clothes and showering under normal conditions,' which under

<u>Steiner</u> are not covered by the FLSA." <u>See</u> <u>Gorman</u>, 488 F.3d at 594. Further, the <u>Gorman</u> court observed that "donning and doffing" of the equipment at issue in that case were "'relatively effortless,' non-compensable, preliminary tasks." <u>Id.</u> at 594 (citing <u>Reich v. New York City Transit Auth.</u>, 45 F.3d 646, 649 (2d Cir.1995). Accordingly, the Court held that these activities constituted non-compensable preliminary and postliminary tasks for which no pay was required under the FLSA.

Here, the record demonstrates that the arming up process was accomplished with minimal effort and the arming down was not difficult or time-consuming. <u>See</u> <u>Reich</u>, 45 F.3d at 651 (Second Circuit observed that Portal-to-Portal Act amendments exempt such "trivial, non-onerous aspects of preliminary preparation, maintenance and cleanup" from "work time" under the FLSA). There is no dispute that the arming up and arming down process was routine, relatively effortless and could be accomplished in a short period of time. The deposition testimony of plaintiffs confirm that the arming up process took approximately thirty seconds to less than a minute to complete. The arming down process was essentially the same process in reverse and was completed in the same amount of time. Upon completion of the arming up process and retrieval of the handheld radio, guards reported to their first assigned post. Based on the deposition testimony, it takes less than thirty seconds to walk from the armory, which is currently located in the guard house, to many of the posts.

The remaining posts can be reached by a person walking at a normal pace in one to five minutes. Further, plaintiffs were not required to arrive on site at any particular time prior to their scheduled shift to be considered on time.

Plaintiffs attempt to establish a question of fact by providing four affidavits contending that it could take up to eight to fifteen minutes to complete the arming up and arming down process prior to March 1, 2006.[5] For instance, in Stacy Janke's affidavit[6] submitted in opposition to defendant's motion for summary judgment, he states that "the time required to... report to an assigned post, is approximately twelve (12) to fifteen (15) minutes." <u>See</u> Janke Aff., ¶6. It is well settled, however, that plaintiffs "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." <u>See</u> <u>Hayes v. New York City</u> <u>Department of Corrections</u>, 85 F.3d 614, 619 (2d Cir.1996)(citations omitted); <u>see also</u> <u>Schratz v. Potter</u>, 2008 WL 5340992 at *6 (W.D.N.Y.2008).

Indeed, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for

---

[5]As previously stated, many plaintiff testified at their deposition that it generally took thirty seconds to complete the process of arming up and arming down prior to March 1, 2006. <u>See</u> Albrecht Tr. at 20-21; Smith Tr. at 26-27; Van Liew Tr. at 36; Burt Tr. at 23-24; Janke Tr. at 26; Carlson Tr. at 31; Huff Tr. at 38; Mastrangelo Tr. at 22-23; Youngs Tr. at 21; Newstead Tr. 18-19.

[6]Mr. Janke was one of the four plaintiffs who submitted an affidavit in opposition to Wackenhut's summary judgment motion and who was also deposed during the discovery phase of this litigation.

trial." See Hayes, 85 F.3d at 619. Though Stacy and other plaintiffs testified under oath at their deposition, they never claimed that it took twelve to fifteen minutes to complete the arming up or arming down process. Rather, Mr. Janke and other plaintiffs testified that the actual process of arming up could be completed in less than one minute. It is also undisputed that the arming down process involves the same procedure in reverse and was completed in the same time frame. Accordingly, plaintiffs cannot rely on their contradictory affidavits to create an issue of fact on this point. Moreover, a further analysis of the four affidavits submitted by plaintiffs confirms that all four individuals included time in their pre-shift estimates that is not part of the arming up and arming down process. Rather, they included time allegedly spent walking, waiting in line and/or donning and doffing generic equipment or clothing that is distinct from arming up and arming down. None of the time allegedly spent engaging in any of those activities is compensable under Gorman and Second Circuit case law.

Further, plaintiffs' reliance on the decision in Maciel v. City of Los Angeles, 569 F.Supp2d 1038 (C.D.Calif.2008) is misplaced. The rationale employed by courts such as Bamonte v. City of Mesa, 2008 WL 1746168 (D.Ariz.2008) are more sound and have been adopted by many other courts and the Department of Labor as it pertains to the significance of an employee's ability to leave work with required equipment. See Bamonte, 2008 WL 1746168 at *5 (observing that "a rule

which categorically defines donning and doffing time as noncompensable when an employee has an opportunity to change at home is consistent with the Department of Labor's "longstanding" interpretation of the FLSA.") In <u>Bamonte</u>, the court held that time spent changing into and out of police uniforms and other equipment was not compensable because the police officers were allowed to go to the police station in uniform. <u>See</u> <u>id.</u> at \*11-12. Here, the evidence reveals that plaintiffs were free to leave the site in their uniforms, with most of the equipment they were issued by Wackenhut, including the radio pouches, gun belts, and bandoliers which the four plaintiffs reference in their affidavit in opposition to the motion for summary judgment.

As a matter of law, the activities for which plaintiffs seek compensation were preliminary and postliminary activities not subject to compensation under the FLSA. To the extent that they were otherwise compensable activities, they are de minimis in nature. Accordingly, defendant is entitled to summary judgment.

### B.  *De minimis* **Doctrine**

Work that is in theory covered by the FLSA may not be compensable when it is "*de minimis*," that is, when it involves "only a few seconds or minutes of work beyond the scheduled working hours." <u>See</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946). The Second Circuit in <u>Gorman</u> discussed the de minimis doctrine and ruled that the doctrine provided an alternative ground for dismissal

of the Indian Point plaintiffs' donning and doffing" allegation. <u>See</u>
<u>Gorman</u>, 488 F.3d at 594. A court considers three factors in
determining whether otherwise compensable time is *de minimis*: (1) the
practical administrative difficulty of recording additional time; (2)
the size of the claim in the aggregate; and (3) whether the claimants
performed the work on a regular basis. <u>See</u> <u>Reich</u>, 45 F.3d at 652
(quoting <u>Lindow v. United States</u>, 738 F.2d 1057, 1062-63 (9th
Cir.1984)); accord <u>Singh v. City of New York</u>, 524 F.3d 361, 370-72
(2d Cir.2008) (applying this test).

An application of the three-factor test shows that the arming up
and arming down time to be *de minimis*, because it would be
administratively impractical to account for, would not amount to a
significant amount of time overall, and would not compensate
plaintiffs for work performed on a regular basis. Plaintiffs
assertion that it would not have been difficult to keep track of the
time allegedly at issue in this case is unsupported by the record and
it overlooks plaintiffs' own contention that several factors may on
occasion impact the duration of the pre-shift process. For example,
plaintiffs cite to alleged issues relating to radio traffic and if
this issue occurred from time to time as claimed, they were
unpredictable and infrequent and thus would be administratively
difficult for Wackenhut to monitor and record. The task of recording
the time spent in performing such duties, when they arise, might well
exceed the time expended in performance of the duties.

Moreover, Mr. Janke and other plaintiffs admitted during their depositions that the actual process of arming up and arming down could be completed in less than one minute. See Janke Dep. Tr. at 26. Moreover, Mr. Janke conceded that if he was assigned to a post in the Security Building, he could report to that post in three minutes or less after he cleared security. See id. at 37. Mr. Janke's sworn deposition testimony on this point, along with the testimony of other plaintiffs confirms that guards could complete the arming up procedure and report to any post at the Ginna facility in a time of less than three to six minutes after they cleared security. See id. at 23-32. The Second Circuit has held that preliminary and postliminary activities involving such short time periods are *de minimis* as a matter of law, even when they involve an activity that is deemed to be integral and indispensable to the employee's principal work. See Reich, 45 F.3d at 652-53 (acknowledging that the policy of law is to disregard preliminary activities that involve minimal amounts of time and effort); Singh, 524 F.3d at 370 (*De minimis* doctrine permits employers to disregard otherwise compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work") (quoting Anderson, 320 U.S. at 692.

Further, the Second Circuit in Singh held that preliminary activities do not become compensable even if these preliminary activities are interrupted or extended by some *de minimis* activity that might otherwise be compensable. See Singh, 524 F.3d at 371 n. 8.

Accordingly, the <u>Singh</u> Court recognized that "the law of this circuit-at least since [<u>Reich</u>]-is that a *de minimis* principal activity does not trigger the continuous workday rule." <u>See</u> <u>id.</u> Even if the alleged walking time or other pre-shift activities referenced in Mr. Janke's affidavit were included in this analysis, the total amount of time in question would still be viewed as insignificant and non-compensable under the well-established standards in this Circuit. Accordingly, considered in the aggregate, the time spent by plaintiffs walking to their assigned post after receiving their weapons was not substantial.[7] Further, the evidence demonstrates that the time periods involved in this case, whether analyzed separately or in the aggregate, are less than those time periods that have been recognized as being *de minimis* as a matter of law in the Second circuit. <u>See</u> <u>Gorman</u>, 488 F.3d at 595 n. 7; <u>Reich</u>, 45 F.3d at 652; <u>Singh</u>, 545 F.3d at 370-71.

In addition, plaintiffs' affidavits included time in their estimates that they allegedly spent engaging in certain activities that occurred before the arming up process started. For instance, plaintiffs included time spent on occasionally addressing radio issues or difficulties such as dealing with radio traffic at the

---

[7]While there is no bright line test for determining how much time will be considered *de minimis* for FLSA purposes, time periods of fifteen minutes or more have often been found to be *de minimis*. <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F.Supp.2d 556, 564 (E.D.Tex.2001) (majority of courts have found daily periods of approximately 10 minutes *de minimis* as a matter of law); <u>Lindow v. U.S.</u>, 738 F.2d 1057, 1062 (9th Cir.1984) (held that seven to eight minutes spent by employees in shift change activities, was *de minimis* and therefore not compensable); <u>Carter v. Panama Canal Co.</u>, 314 F.Supp. 386, 392 (D.D.C.1970) (held that two to fifteen minutes was *de minimis* for FLSA purposes), aff'd, 463 F.2d 1289 (D.C.Cir.), cert. denied, 409 U.S. 1012 (1972).

BRAVO alarm station. However, it appears that these alleged radio issues occurred infrequently and were of short duration. Indeed, this issue only took a matter of seconds to address and was insubstantial. Despite all of the various arguments raised by plaintiffs, the undisputed evidence based on plaintiffs' depositions show that the arming up and arming down process took less than one minute to complete. Considering the administrative difficulty of establishing a reliable system for recording the time spent in such duties, the irregularity of the occurrence, and the small amount of aggregate time so expended, this Court concludes that the *de minimis* doctrine is applicable and summary judgment is granted in favor of Wackenhut and plaintiff's cross-motion is denied. Plaintiffs' Second Amended Complaint is dismissed.[8]

### III. <u>Arming Up and Arming Down Since March 1, 2006</u>

Wackenhut argues that it is undisputed that as of February 26, 2006, the guards were paid from the beginning of the pre-shift briefing process, which happens before that arming up process through the time they complete the process of arming down. <u>See</u> Def. Br. at 16-17; Reply Br. at 8-9; Opp. Br. at 14. On or about February 26, 2006, Wackenhut implemented a pre-shift briefing process for all

---

[8]Plaintiffs have also argued that they were required by Wackenhut to arrive at their assigned posts fifteen minutes prior to their scheduled shifts. <u>See</u> Pl. Br. at 5. Plaintiffs failed to produce evidence demonstrating that Wackenhut deducts paid work time from employees who are not present at their work post fifteen minutes before their scheduled shift. Indeed, guards were not disciplined by defendant and were considered to be in compliance with Wackenhut's policies and expectations even if they completed the security clearance just a minute or two before the start of their scheduled shift, were able to retrieve their radio and report to post on time. <u>See</u> Burt Dep. 29-33.

guards at the Ginna facility. During the pre-shift briefings, guards are advised about various issues relevant to their position including any incidents that may have occurred in previous shifts, developments in the industry, and/or changes in any policies or procedures by Wackenhut. The pre-shift briefing is held in the Security Building. Guards are able to go directly to the briefing room once they complete the security clearance process in the same building. Since the implementation of these pre-shift briefings, guards report to the briefing room fifteen minutes before the start of their scheduled shifts. For instance, a guard assigned to work the 6:30 a.m. to 2:30 p.m. shift must report, in uniform, to the briefing room by 6:15 a.m. At the conclusion of the pre-shift briefing, the security guards report to the armory to retrieve their weapons and they then proceed to their first assigned post.

Plaintiffs' main contention is that the time spent in the pre-shift briefings is not calculated towards their overtime compensation and that such claim for failure to pay overtime compensation can only be addressed upon completion of all discovery. See Pl. Opp. Br. at 7. The Court disagrees. Plaintiffs never made this assertion as part of their claims in this case. In fact, plaintiffs testified that their claims were limited to the time allegedly spent clearing security, arming up and arming down. See Janke Tr. at 13; Smith Tr. at 15-16; Van Liew Tr. at 20-21; Burt Tr. at 11-12; Carlson Tr. at 13. Plaintiffs further admitted that they have been fully compensated for

all the time spent arming up and arming down since early 2006 when the shift briefings were implemented. See Janke Tr. at 38; Smith Tr. at 39-41; Van Liew Tr. at 49-50; Burt Tr. at 33-34; Mastrangelo Tr. at 34-35.

Neither in their complaint nor during depositions of any of the plaintiffs was the allegation made that the time spent in shift briefings was not included in the overtime compensation or that this was part of plaintiffs' assertions in this case. Plaintiffs original complaint was filed on March 23, 2007, more than one year after the implementation of the shift briefings and yet it did not contain any assertion concerning overtime compensation. The complaint was subsequently amended twice by plaintiffs and still no assertion was made concerning inclusion of the shift briefing time in plaintiffs' overtime calculation in either of plaintiffs' amended complaints. See Information Superhighway, Inc. v. Talk America, Inc., 395 F.Supp.2d 44, 50 (S.D.N.Y.2005) (A non-moving party cannot overcome a motion for summary judgment with mere assertions).

In addition, the evidence demonstrates that this compensation was provided in accordance with a written policy by Wackenhut that became effective in late February 2006 and subsequently in accordance with the terms of a negotiated labor contract. See Smith Tr. at 41-42; Burt Tr. at 34-35. Plaintiffs' current assertion in two of the affidavits include statements that the time spent in pre-shift briefings is not calculated towards their overtime compensation. See

Anthony Siragusa Aff., ¶8 and Carl Schwarting Aff., ¶8. However, this assertion is not supported by competent evidence and is inconsistent with prior admissions by plaintiffs concerning their claims and the issues in this action. It is well settled that a party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>See</u> <u>D'Amico v. City of New York</u>, 132 F.3d 145, 150 (2d Cir.1998); <u>McDonald v. Gonzales</u>, 2007 WL 951445 at *2 (N.D.N.Y.2007) (party "may not create a question of fact by simply making vague, conclusory allegations") (quoting <u>Govan v. Campbell</u>, 289 F.Supp.2d 289, 295 (N.D.N.Y.2003)).

Further, Rule 56(f) provides a vehicle for parties opposing a motion for summary judgment to obtain further discovery before the court rules on the motion.[9] The Second Circuit "has established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56(f). The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." <u>See</u> <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1138 (2d Cir.1994) citing <u>Hudson River Sloop Clearwater, Inc. v.</u>

---

[9]Rule 56(f) states in full: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

<u>Dep't of Navy</u>, 891 F.2d 414, 422 (2d Cir.1989); <u>see</u> <u>also</u> <u>Burlington</u> <u>Coat Factory Warehouse Corp. v. Esprit De Corp.</u>, 769 F.2d 919, 926 (2d Cir.1985) (establishing the four-part test); <u>Rebrovich v. County</u> <u>of Erie</u>, 544 F.Supp.2d 159, 167 (W.D.N.Y.2008). Here, plaintiffs did not file an affidavit meeting the Rule 56(f) requirements and based on the above discussion, plaintiffs have not offered any legitimate explanation for the reasons they should be granted additional discovery. The record reveals that the discovery deadline originally expired on October 31, 2007. The deadline was extended by the Court on two occasions at plaintiffs' request. Moreover, on October 2, 2008, plaintiffs' counsel indicated to the Court that Wackenhut had responded to its last discovery request and that the Court could set the dispositive motion deadline. Accordingly, plaintiff's request for further discovery is denied and Wackenhut's motion for summary judgment is granted.

## **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiffs' cross-motion is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          September 24, 2009